**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Case No. 21-cr-74-DLF** |
| | : | |
| **JOSIAH COLT,** | : | |
| | : | |
| Defendant. | : | |

<u>**GOVERNMENT'S SENTENCING MEMORANDUM**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in the above-captioned matter.  For the reasons set forth herein, the government requests that this Court sentence Josiah Colt to 18 months' imprisonment, three years of supervised release, $1,000 in restitution, and the mandatory $100 special assessment for each count of conviction.

## I.    INTRODUCTION

The defendant, Josiah Colt, together with his coconspirators, Ronald Sandlin and Nathaniel DeGrave,[1] substantially planned for and then participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars' in losses.[2]

---

[1] This Court sentenced Sandlin to 63 months of incarceration on December 9, 2022. DeGrave pleaded guilty, pursuant to a cooperation agreement, to Conspiracy to Obstruct an Official Proceeding and Assaulting Certain Officers in case number 21-cr-88, in June 2022. He is due to be sentenced by this Court on May 10, 2023.

[2] As of October 17, 2022, the approximate losses suffered as a result of the siege at the United

Colt and his co-conspirators traveled to Washington, D.C. to attend the "Stop the Steal" rally with the expectation that there would be violence—specifically, a "civil war."   When Sandlin called on others to join him in D.C., Colt responded, "[n]ow is the time to fight."   In the days leading up to January 6, 2021, Colt coordinated with his co-conspirators to bring a car full of weapons and protective gear—including gas masks, bear spray, knives, and Colt's Glock .43 pistol—to D.C.

On the evening of January 5, 2021, Colt brought his Glock pistol to a rally in D.C.   He left his gun in his hotel room the next morning, however, after having a "debate" with his co-conspirators regarding the potential penalties for carrying a weapon in D.C.   On January 6, after Sandlin livestreamed a video in his presence calling on "fellow patriots" to "take the Capitol" and emphasizing that "freedom is paid for with blood," Colt joined him in climbing over barricades and storming the Capitol.

While in the Capitol, Colt rallied his co-conspirators and others to find "the Senate room…where they're meeting."   He ultimately succeeded in breaching the Senate Gallery after his co-conspirators cleared the way by assaulting U.S. Capitol Police officers tasked with defending this space, all while Colt recorded the violence on his GoPro camera.   Once inside, Colt focused on finding a way down to the Senate floor, ultimately deciding to dangle from the balcony and jump down.   He then ran to the seat occupied only moments before by the Vice President and gave a political statement before opening a door and allowing dozens more rioters to breach the

---

States Capitol was $2,881,360.20. That amount reflects, in part, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

Senate floor.   Colt celebrated his actions in a social media livestream after he departed the Capitol, bragging that he was the first one to sit in what he mistakenly described as Speaker Pelosi's chair.

Colt was among the first Capitol rioters to be identified after a photograph of him dangling from the Senate balcony and his livestreams went viral.[3]   He turned himself in a few days later and began cooperating with the government shortly thereafter.[4]   Colt holds the distinction of being the very first January 6 defendant to plead guilty pursuant to a cooperation plea.

The reality of this case is thus two-fold.   On one hand, Colt anticipated a "civil war" in the nation's capital on January 6 and planned weeks in advance to interfere with the peaceful transition of power, conduct befitting a serious sentence as anticipated by law and the Sentencing Guidelines.   He and his co-conspirators brought a cache of weapons, including guns, to D.C. in anticipation of violent conflict.   On January 6, 2021, with knives and bear mace in tow, Colt single-mindedly sought out "the Senate…where they're meeting" as part of a mob bent on obstructing the Electoral College vote certification and was the first to breach the Senate floor, opening doors so other rioters could as well.   On the other hand, Colt has timely, actively, and publicly cooperated in a high-profile investigation garnering national attention.

The government's recommended sentence represents a balancing of the gravity of Colt's conduct and the need for both specific and general deterrence against Colt's significant cooperation.   Considering all of the relevant factors, the government believes that a sentence of

---

[3] *See* Katie Terhune, *"It's about to go down": Meridian man brags about joining riot at U.S. Capitol*, KTVB7 (Jan. 7, 2021), *available at* https://www.ktvb.com/article/news/crime/josiah-colt-us-capitol-riot-idaho-videos/277-a32b6e99-b4b5-4310-bc18-6339b76f51c0.

[4] The government has detailed the extent and nature of his cooperation in a separate sealed motion for departure pursuant to 18 U.S.C. § 3553(e) and Section 5K1.1 of the United States Sentencing Guidelines.

18 months' imprisonment is warranted.

## II.    FACTUAL BACKGROUND

### A.    The January 6, 2021 Attack on the Capitol

The government refers to the court to the stipulated Statement of Offense ("SOO") filed in this case, ECF No. 22, for a short summary of the January 6, 2021 attack on the United States Capitol by hundreds of rioters in an effort to disrupt the peaceful transfer of power after the 2020 presidential election.

### B.    Colt's Role in the January 6, 2021 Attack on the Capitol

#### i.    Planning and Coordination Pre-January 6

After the November 2020 presidential election, Colt used his social media presence to spread the type of false information and violent rhetoric that led thousands to descend on the U.S. Capitol and ultimately participate in a riot.   For example, on November 9, 2020, Colt responded to a post on Sandlin's Facebook page, stating that "the right won't turn away from the use of force if necessary to preserve the integrity of our election process and freedom from socialist tyranny. The left's snowflake faces are still melting off just for being called out on verified and widespread fraud."

As January 6 approached, Colt's rhetoric grew increasingly violent.   For example, on December 4, 2020, after learning that Congress had moved to certify the election, Colt told Sandlin in a private Facebook chat, "time to fight comrade" and "get your gunz."   In the following days, Colt and Sandlin discussed getting ready to "go to civil war," with Colt suggesting they "get stocked up."   Similarly, in an undated SnapChat message to a group of users called "Idaho Militia," Colt wrote, "[y]ou guys think it's gonna go to civil war?"   When a user responded, "at

4

this point I feel like anything could happen," Colt replied, "I'd rather not either but I want to be prepared if it does. Joe Biden did not win this election."

On December 23, 2020, Sandlin recruited individuals in his Facebook network to join him at the rally in D.C. on January 6 to "stand behind Trump when he decides to cross the rubicon."[5] The next day, Colt messaged a friend on Facebook about the January 6 rally, stating that "[t]his is such an important moment in history for our country I think shit's gonna go down. I bet some people die [to be honest]." Colt wrote another friend that day that he was "buying a ticket to the civil war in DC." On December 31, 2020, Sandlin announced his plans with Colt and DeGrave to travel to D.C. on January 6, seeking crowd-sourced funds to shoot a mini documentary while in D.C. *See* SOO ¶ 10. In response to this post, Colt wrote, "[i]t's time to fight for the freedom of this country from getting bulldozed by the domestic terrorists in office pushing Chinese communist agendas and ideology while stripping our freedoms away one by one. Now is the time to fight."

Beginning on December 31, 2020, Colt, DeGrave, and Sandlin began a private group chat on Facebook in which they discussed "shipping guns" to Sandlin's residence in Tennessee, where they would all meet before driving to D.C. Colt said he would try to fly with his "G43," referring to his Glock .43 caliber pistol. SOO ¶ 11. They purchased weapons and paramilitary gear on Amazon.com to take to the Capitol. Sandlin later stated he was bringing his "little pocket gun"

---

[5] This phrase refers to Julius Caesar crossing the Rubicon river with his army and thereby starting the civil war that ended the Roman Republic. It signifies committing oneself "irrevocably to a risky or revolutionary course of action, similar to the modern phrase 'passing the point of no return.'" *See* https://www.collinsdictionary.com/dictionary/english/to-cross-the-rubicon.

and a knife.   Colt later posted pictures of his recent purchases, including a Glock holster, a gas

mask, and a helmet.   SOO ¶ 11; *see* Figure 1.



*Figure 1*

On January 4, 2021, DeGrave informed Sandlin and Colt, "[w]e meet here at 10:00 a.m.,"

and sent a screenshot depicting a map of the U.S. Capitol with a "Meet Here" notation in front of

the building.   SOO ¶ 12.   He also forwarded them a post from the Parler application stating:

"#DoNotCertify #january6th" and "#stopthestealcaravan #darktolight #thegreatawakening

#DRAINTHESWAMP," followed by his own commentary, "let em try us."   *Id.*   That same day,

Sandlin posted a picture of Colt lying in a hotel room bed holding his pistol, along with the caption:

"My fellow patriot sleeping ready for the boogaloo Jan 6."   SOO ¶ 13; Figure 2.   Colt responded

on Facebook that he was "ready for any battle."   *Id.*



*Figure 2*

Colt, DeGrave, and Sandlin (hereinafter, the "trio") ultimately brought the following weapons and other items with them in a rental car from Tennessee to the D.C. metropolitan area on January 5, 2021: Colt's Glock .43 pistol, Sandlin's M&P bodyguard pocket pistol, two magazines of ammunition, two cans of bear mace (one purchased by Colt), gas masks, a handheld taser/stun gun (brought by Colt), military-style vests/body armor, two helmets, an expandable baton (brought by Colt), walkie talkies (brought by Colt), and several knives.   *See* SOO ¶ 14.

When they arrived in the D.C. area on January 5, the trio picked up a fourth individual—a female—from Reagan National Airport, and the four went to a rally protesting the results of the 2020 presidential election in Washington, D.C. that evening.   Colt brought his Glock to the rally.

       *ii.*      *Events of January 6*

Colt and his co-conspirators traveled to D.C. early in the morning on January 6 to attend the "Stop the Steal" rally.   As they prepared for the rally in their hotel room, Colt recorded a video

in which the trio and the female friend appear.   Colt discussed a "debate we've been having for days now: should we carry our guns or not?"   *See* Ex. 1 (video from Colt's social media, until 30 second mark).[6]   He acknowledged that "in Washington, D.C. it's a felony, five years potentially in prison…for carrying a gun there."   DeGrave responded, "for the camera's sake, we're not going to carry," which Colt repeated for the social media audience, adding, "but would you carry?"   Colt and Sandlin ultimately armed themselves with knives, leaving their guns behind, while DeGrave carried bear spray to go to the rally.   *See* SOO ¶ 17; DeGrave Statement of Offense ¶ 24.   All three wore protective gear, including face/gas masks and shin guards.

Before the riot began, the trio traveled from the rally to a restaurant in Alexandria, Virginia, where they watched former President Trump's speech on television.   After the speech ended, Sandlin live streamed a "selfie"-style video while sitting across the table from DeGrave and Colt. In the video, Sandlin said, no less than four times, "freedom is paid for with blood."   SOO ¶ 16. Sandlin also predicted that there was "going to be violence" at the rally and "urge[d] other patriots" to "take the Capitol."   *Id.*   He added that he was "willing to go and fight for this country…even if that means I have to sacrifice in some capacity."

Sandlin then handed the recording device to Colt and DeGrave, whereupon Colt stated that "[t]he whole thing is a scam, dude.   The whole election, they can't just steal an election.   Like they are trying to do in Georgia last night.   It is a lie."   *See id.*   Sandlin then took the device back from them and stated: "You either have conviction and you stand up for what you believe in or you sit down and shut the fuck up."   Towards the end of the video, Sandlin stated:

> If we need to occupy the Capitol, we will occupy the Capitol…   We
> needed to grab a bite to eat, and like decompress because we went

---

[6] All audio/video exhibits cited will be provided to the Court via a file sharing platform.

through a few intense moments and also regroup and plan for the next….one o'clock is when it is all going to go down.   So we are going to be there back by one o'clock when it is action time it is game time.[7]

At this point in the video, Colt asked Sandlin, "storming the Capitol?" to which Sandlin replied, "I'm willing to occupy the Capitol."   *See* Ex. 2 (video from Sandlin's social media, from 9:25-10:10 mark).   The trio agreed to go to the Capitol shortly after this video was made. DeGrave Statement of Offense ¶ 23.

The trio eventually returned to D.C. and began walking on the National Mall towards the Capitol.   In a video taken during this time, with Colt at his side, DeGrave told someone on a walkie talkie, "meet us there, over."   Ex. 3 (recovered from Sandlin's laptop, entirety).   He then stated, "they're trying to get through the barricade, they're going in," to which Sandlin responded, "It's go time.   Pence did his job, it's time for us patriots to do our job.   We need to occupy the Capitol building."   *Id.*

Throughout the day, the trio monitored the status of the certification proceedings.   At one point, they expressed the (incorrect) belief that former Vice President Mike Pence had objected to the Electoral College results from Arizona.   *See* Ex. 4 (video from Colt's cell phone, entirety). Colt was fully aware that Congress was meeting inside the Capitol that day, and that the Senate would "debate [the objections] for the next two hours."   *See* Ex. 5 (video from Colt's cell phone,

---

[7] The joint session of Congress to certify the election was scheduled to begin at approximately 1:00 p.m.

entirely).   As the trio approached the Capitol, however, they learned that Vice President Pence had not in fact intervened to stop the certification of the election.   SOO ¶ 18.

Upon arriving on Capitol grounds, the trio saw that rioters had breached the barricades and were storming the Capitol.   They scaled a dismantled bike barricade to get over a stone barrier and moved closer to the Capitol building.   *See* SOO ¶ 20.   The trio then wormed its way through the crowd, pushing past others to get closer to the Capitol building.   As they did so, Colt repeatedly yelled encouragement to other rioters, such as "this is our house, not China's house" and "get in the building or get out of the way." *See* Ex. 6 (video from Colt's GoPro camera, from beginning to 1:12 mark).   As he approached the bottom of the scaffolding set up for the presidential inauguration, witnessing rioters climbing above him, Colt shouted, "we're patriots, we're not slaves." *Id.* (from 3:20-4:20 mark).   He continued to exclaim things such as "liars, cheaters…we won the election." *Id.*   Colt began to chant "fuck the GOP," before stating, "you woke up the lion, we're not silent anymore." *Id.* (from 5:10-5:30 mark).

As he ascended the stairs next to the scaffolding, Colt told his co-conspirators, "we're making it to the main room.   The Senate room." *Id.* (from 6:15-6:30 mark); SOO ¶ 20.   As Colt continued up the stairs, in response to someone saying that there was "pepper spray inside the building, masks up," he put on his own gas mask.   *See* Ex. 6 (from 7:15-7:40 mark).   Once on the Northwest Terrace of the Capitol, Colt asked DeGrave if he was "ready," to which DeGrave responded, "we're fucking angry."   Colt added, "we're gonna get tear gassed but we're fucking

ready. Let's do this shit." *Id.* (from 7:40-7:55 mark).   As he approached the building itself, he heard glass shattering and a high-pitched alarm blaring.   SOO ¶ 20.

Undeterred by the mayhem and obvious signs of a violent breach of the U.S. Capitol building, the trio stormed the Capitol through the Upper West Terrace doors at 2:35 p.m., just as Sandlin had suggested at the restaurant hours earlier.   *See* Exs. 2, 6.   Colt exclaimed shortly after he breached the building, "this is the best day ever."   Ex. 6 (from 8:50-8:55).

The trio made their way through the Rotunda to the East Rotunda doors, on the other side of which a mob was attempting to gain entry to the Capitol.   As he entered this space, Colt observed three USCP officers standing guard in front of these doors, with twenty to thirty other individuals encircling them.   *See* Ex. 7 (video from Colt's GoPro camera).   Colt climbed a set of stairs, where he cheered on rioters (including Sandlin and DeGrave) as they pushed against the officers guarding the door, forcing the door behind them open and allowing the mob outside to begin streaming in.   *See* Ex. 7 (from 1:35-2:15).   He then shouted, "follow me upstairs!"   *Id.* Officer K.T. was pepper sprayed by rioters during this assault in which Sandlin and DeGrave participated, rendering him momentarily blind and forcing him to feel along the wall to make it to safety.   *See id.*   Despite recording this moment with his GoPro, Colt continued on his path through the Capitol.

After regrouping with Sandlin and DeGrave, Colt set off in search of the "Senate…where they're meeting."   *See* Ex. 7 (from 3:35-4:05).   He added, "there's no looking back now, boys." *Id.*   The trio eventually made their way to a hallway just outside the Senate Gallery, a balcony overlooking the Senate Chamber.   As the trio entered the hallway, three USCP Officers were

locking the doors to the Gallery to prevent the rioters from gaining access.   *See id.* (from 5:05-6:05).

Colt recorded as Sandlin led the charge against these officers, shouting, "don't you lock another door" and "grab the door."   *See id.*   Sandlin then instigated a shoving match with the officers, with DeGrave and others joining in, in an attempt to keep the doors to the Senate Gallery open.   *Id.*   During the scrum, Colt saw Sandlin hit Officer N.T. in the back of his head, near his ear.   *See id.*; SOO ¶ 21.   Taking full advantage of his co-conspirators' acts of violence, Colt maneuvered around the retreating officers and entered the Senate Gallery at approximately 2:42 p.m.   *See* Ex. 7 (from 5:05-5:45).   Upon seeing the Senate Chamber devoid of Senators, who had been evacuated only minutes earlier, Colt exclaimed, "it's empty."   *See id.*; SOO ¶ 22.

Colt's next goal was to breach the Senate floor itself.   He asked other rioters how to get down from the balcony to the floor.   Ex. 7 (from 6:05-7:45).   Upon encountering DeGrave, Colt asked, "Ronnie's toast, right?"—an apparent reference to Sandlin's assault on Officer N.T. moments earlier.   *See id.*   In response, DeGrave bragged to Colt about punching the officers and getting away with it.   Colt and DeGrave then made their way around the balcony looking for a spot to jump down, when another rioter, Bruno Cua, shouted, "if I go down there and open the doors, will you storm?"   *See id.* (from 7:45-9:00); *see also United States v. Cua*, 21-cr-107, ECF No. 281 ¶ 19.[8]   Colt responded, "yeah, let's go, dude…we got you, bro."   He then passed his GoPro camera to DeGrave.

---

[8] Cua recently was convicted of Obstruction of an Official Proceeding, among other charges, in a stipulated bench trial before Judge Moss. *See United States v. Cua*, 21-cr-107, Feb. 24, 2023 Minute Entry.

As he prepared to climb down to the Senate floor, Colt shouted, "this is our House, this is our country, this is for the people."   Ex. 7 (from 9:00-end).   He then jumped down, as captured in the now-infamous photograph (see Figure 3), and darted towards the chair reserved for the Senate President (*i.e.*, the Vice President of the United States), where he sat and raised his fist in the air in triumph as the rioters in the Gallery cheered him on.   *See id.*; *see also* Figure 4. He then jumped down, as captured in the now-infamous photograph (see Figure 3), and darted towards the chair reserved for the Senate President (*i.e.*, the Vice President of the United States), where he sat and raised his fist in the air in triumph as the rioters in the Gallery cheered him on.   *See id.*; *see also* Figure 4.   DeGrave instructed Colt to "open the door" to an antechamber off the Senate Floor—instructions Colt heeded.   *See* Ex. 7 (from 10:15-end); Figure 5.   Seconds after Colt opened this door, Bruno Cua also jumped down onto the Senate Floor from the Senate Gallery.   Colt and Cua then rushed through the set of doors that Colt had previously unlocked and entered an alcove containing a second set of doors.   Within fifteen seconds, rioters who had previously been up on the Senate Gallery balcony began to breach the Senate floor through those doors, rifle through and photograph Senators' papers, and leave threatening notes.[9]



*Figure 3*

---

[9]  *See* ITV News, *New video shows US Capitol rioters rifling through Senators' desks and papers* (Jan. 17, 2021), *available at* https://www.youtube.com/watch?v=rtLe1YgIH6s.

13



*Figure 4*



*Figure 5*

Colt and DeGrave proceeded to leave the Senate Chamber, descend a set of stairs, and exit the east side of the Capitol at approximately 2:51 p.m., raising their arms triumphantly and cheering. *See* Ex. 8 (video from Colt's GoPro camera, from 4:05-4:50). Colt exclaimed, "I changed history when I sat in that fucking seat." *Id.*

       *iii.*      *Post-Riot Activities*

As discussed at length during his co-conspirators' detention proceedings, Colt, Sandlin, and DeGrave got in their rental car and headed back west immediately after the riot, seeking a "red

state" for refuge.   They first stopped in West Virginia before heading back to Tennessee, where DeGrave took his scheduled flight home.   Colt drove Sandlin to Las Vegas and then back to his home state of Idaho.   He voluntarily surrendered to the FBI on January 12, 2021, and cooperated with authorities until his guilty plea on July 14, 2021.

### III.   THE CHARGES AND GUILTY PLEA

On February 3, 2021, a federal grand jury returned an indictment charging Colt with Obstruction of an Official Proceeding in violation of 18 U.S.C. § 1512(c)(2) and three misdemeanor counts related to his unlawful entry into the Capitol building.   On July 14, 2021, Colt pleaded guilty to Count One, Obstruction of an Official Proceeding, pursuant to a public cooperation agreement.

### IV.   STATUTORY PENALTIES

Colt now faces sentencing on Obstruction of an Official Proceeding in violation of 18 U.S.C. § 1512(c)(2).   As noted by the plea agreement and the Probation Office, he faces up to 20 years of imprisonment, a fine up to $250,000, and a term of supervised release of not more than three years.

### V.   THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."   *United States v. Gall*, 552 U.S. 38, 49 (2007).

In this case, the applicable Guidelines range is not in dispute.   The parties and Probation agree that the below Guidelines apply:

<u>Count One: 18 U.S.C. § 1512(c)</u>

| U.S.S.G. § 2J1.2(a) | Base Offense Level | 14 |
|---|---|---|
| U.S.S.G. § 2J1.2(b)(1)(B) | Threat or Physical Injury to Person or Property[10] | +8 |
| U.S.S.G. § 2J1.2(b)(2) | Resulted in Substantial Interference | +3 |
| U.S.S.G. § 2J1.2(b)(3)(C) | Extensive Scope, Planning, or Preparation[11] | +2 |
| | **Total** | **27** |

*See* Plea Agreement at ¶ 4(A); PSR ¶¶ 6, 34-42.

The U.S. Probation Office calculated Colt's criminal history as category I, which is not disputed.   PSR ¶ 49.   Accordingly, Colt's Combined Offense Level is 27, and his Total Adjusted

---

[10] The parties and Probation have agreed that this Guideline applies because the assaultive conduct of Colt's co-conspirators was clearly threatening, and Colt is liable under the Guidelines for his co-conspirators' reasonably foreseeable acts in connection with their jointly undertaken criminal activity.   *See* U.S.S.G. 1B1.3(a)(1)(B); *United States v. McKeever*, 824 F.3d 1113, 1122–23 (D.C. Cir. 2016) (affirming application of gun-related enhancement where defendant did not carry a firearm but knew his co-conspirators did).   Here, Colt has admitted that he and his co-conspirators unlawfully entered the Capitol on January 6, 2021, intending to stop or delay the congressional proceedings. SOO ¶¶ 8, 24-25.   He has admitted to amassing a cache of weapons and protective gear with his co-conspirators days in advance of the rally that day, "ready for the boogaloo"—i.e., civil war. *Id.* ¶¶ 11, 13-14.   His co-conspirators, for their part, have likewise admitted to conspiring with Colt to stop or delay the congressional proceedings and storm the Capitol.   *See United States v. Sandlin & DeGrave*, 21-cr-88, ECF No. 75 ¶¶ 23, 25, 27, 44-45; ECF No. 85 ¶¶ 20, 22, 39-40.   It certainly was foreseeable that Colt's co-conspirators would use violence to achieve their ends, particularly after Sandlin recorded a video in his presence stating that "there is going to be violence" and calling on others to "take the Capitol" and "fight for this country," among other violent rhetoric.   *See* Ex. 2.   Sandlin and DeGrave's ultimate attempts to interfere with the officers' lawful duties through force "involved …threatening to cause physical injury to a person…in order to obstruct the administration of justice" in the context of the riot at the Capitol during the Electoral College vote certification.   U.S.S.G. § 2J1.2(b)(1)(B).   Moreover, although Colt did not himself engage in violent acts while inside the Capitol, he breached one of the most secure areas inside the building – the Senate Floor – only minutes after Vice President Pence had been ushered out – and opened the doors for other rioters to do the same. This, too, was threatening behavior meriting application of the enhancement.

[11] This Court has previously found that co-conspirator Sandlin engaged in "substantial planning" for the events of January 6, 2021. Apr. 13, 2021, Detention Hr'g Tr. 20:22-22:7. Colt participated in much of the same conduct supporting that finding, including amassing weapons and protective gear to interfere with the peaceful transition of power in D.C. on January 6.

Offense Level after acceptance of responsibility is 24, resulting in a Guidelines imprisonment range of 51 to 63 months.   *See* PSR ¶ 81.

As noted in the separate sealed motion for departure from the Guidelines, the government seeks a departure from the applicable Guidelines range—specifically, a nine-level downward departure, representing a Total Adjusted Offense Level of 15 and a corresponding Guidelines imprisonment range of 18 to 24 months.   In light of Colt's substantial assistance, the government believes a sentence of 18 months' incarceration is appropriate in this case.

## VI.    SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

In this case, sentencing is guided by 18 U.S.C. § 3553(a).   In a vacuum, as discussed below, these factors certainly merit a Guidelines sentence.   As discussed in the government's sealed motion, however, the substantial assistance Colt provided to the government warrants a lower sentence.

### A.  Nature and Circumstances of the Offense

As outlined in Section II.B of this memorandum, Colt's felonious conduct on January 6, 2021 was part of a massive riot that almost succeeded in preventing the Electoral College certification vote from being carried out, frustrating the peaceful transition of presidential power, and throwing the United States into a constitutional crisis.   The nature and circumstances of Colt's offenses were of the utmost seriousness and fully support the government's recommended sentence.

**B.  Defendant's History and Characteristics**

Colt does not have a notable criminal history, resulting in a criminal history score of zero.[12] Moreover, Colt's comportment since returning to Idaho after the riot and while cooperating with the government suggests that he is capable of rehabilitation.  That said, his violent political rhetoric and eagerness to take up and transport arms in the name of his ideology suggest that his personal characteristics weigh in favor of the government's recommended sentence.

**C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law**

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration.  Colt's criminal conduct—i.e., planning for and conducting an assault on the Capitol in order to disrupt and delay the Electoral College count—was the epitome of disrespect for the law.

**D.  The Need for the Sentence to Afford Adequate Deterrence**

*General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C. § 3553(a)(2)(B).   The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[13]   The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

---

[12]  According to the PSR, Colt was convicted of misdemeanor Resisting or Obstruction in Idaho in 2012.  PSR ¶ 48.   He served one day in custody.

[13]  *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

In Colt's case, there is possibly no greater factor that the Court should consider than general deterrence, particularly in light of the level of infamy he achieved through the viral photo of him dangling from the Senate balcony amidst a violent riot.   *See* Figure 3.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a term of incarceration.   As discussed above, Colt's rhetoric leading up to and on January 6 were those of a man girding for battle.   He brought a gun to D.C. in anticipation of a civil war, ultimately choosing to arm himself with a knife and protective gear as he marched to the Capitol.   Although he was one of the first January 6 defendants to accept responsibility, this occurred only after the photograph of him dangling from the Senate Chamber balcony went viral and it was clear he would face legal consequences.   *See United States v. Matthew Mazzocco*, 1:21-cr-54-TSC, Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan).

In light of the gravity of Colt' offense conduct and violent rhetoric, the government believes that the recommended sentence is necessary to prevent Colt from ever again pursuing his political goals through violence.

19

### E.  Unwarranted Sentencing Disparities[14]

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."   So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges."   *Gall v. United States*, 552 U.S. 38, 54 (2007).   In short, "the Sentencing Guidelines are themselves an anti-disparity formula."   *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017); *accord United States v. Sanchez*, 989 F.3d 523, 540 (7th Cir. 2021).   The "open-ended" nature of the Section 3553(a) factors, however, means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender."   *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008).   "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances."   *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences.

---

[14] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Pruitt*, 21-cr-23-TJK, Judge Kelly sentenced the defendant to 55 months in prison.   This sentence was roughly in the middle of Pruitt's advisory Guidelines range of 51 to 63 months.   Like Colt, Pruitt did not plead guilty to assaulting a police officer but his Guidelines range included the eight-level enhancement for threatening physical injury.   At sentencing, Judge Kelly found that Pruitt had been at the forefront of the mob on January 6 and had "amped up" the crowd.   He further found that Pruitt's offense conduct was aggravated by the fact that he engaged in planning and coordination with the Proud Boys.   Similarly here, Colt amped up the mob as he stormed the Capitol, shouting "get in the building or get out of the way" and directing rioters to go to the "Senate…where they're meeting."   He also engaged in significant planning and coordination with his co-conspirators.   Accordingly, Colt's pre-cooperation baseline should be at least as severe as Pruitt's.

In *United States v. Erik Herrera*, 21-cr-619-BAH, the defendant, like Colt, wore a gas mask to the Capitol on January 6.   Herrera entered the Senate Parliamentarian's Office, despite efforts by police officers to expel rioters from the area, and contributed to the chaos by throwing a stack of papers and stealing a bottle of alcohol.   Similarly, Colt breached the Senate Chamber after witnessing his co-conspirators shove police officers over access to the Chamber and instigated additional mayhem inside by jumping down to the Senate floor and opening doors there.   Herrera also smoked marijuana in a Senator's office.   Following his conviction at trial, Herrera was subject to a Guidelines range of 70 to 87 months' imprisonment, incorporating the eight- and three-

21

level enhancements under U.S.S.G. § 2J1.2(b)(1)(b) and (b)(2).[15]   Then-Chief Judge Howell ultimately imposed a 48-month sentence.

The Court may also consider, for reference, the sentence imposed in another §1512(c)(2) case, *United States v. Chansley*, 21-cr-3-RCL.   Like Colt, Chansley breached the Senate floor and sat in the Vice President's seat.   And like Colt, he did not personally engage in violence or property destruction, though he was awarded the eight-level Guidelines enhancement because of his threatening conduct to lawmakers and the Vice President.   Specifically, Chansley left a note on the desk occupied moments before by Colt and, before that, the Vice President, stating "It's only a matter of time Justice is coming!"   He also used his bullhorn to rile up the other rioters and demanded that members of Congress be brought out.   Unlike Colt, Chansley did not engage in substantial planning and thus was not awarded the two-level Guidelines enhancement under U.S.S.G. § 2J1.2(b)(3)(C).   Chansley also did not cooperate and therefore did not benefit from a government motion for a departure under § 5K1.1 of the Guidelines.   For this conduct, Judge Lamberth sentenced Chansley to 41 months' imprisonment.

In light of the similarities to the above-mentioned defendants, balanced against Colt's cooperation, the government's recommended sentence would not result in unwarranted sentencing disparities.

---

[15] Herrera also received a two-level enhancement pursuant to U.S.S.G. § 3C1.1 due to his untruthful testimony at trial, while Colt is subject to a two-level enhancement for extensive planning under U.S.S.G. § 2J1.2(b)(3)(C).   The difference in their Guidelines range is attributable to Herrera's lack of points for acceptance of responsibility.

## VII.   SUBSTANTIAL ASSISTANCE

Colt voluntarily surrendered to authorities on January 12, 2021, and agreed to cooperate with the government on February 27, 2021.   As discussed more fulsomely in the government's sealed motion for a departure under U.S.S.G. § 5K1.1, Colt provided critical information to the government as well as the footage he recorded in D.C. using his GoPro camera and cell phone on and leading up to January 6, 2021.

In July 2021, Colt was among the first defendants to plead guilty to violating 18 U.S.C. § 1512(c)(2) and was the very first cooperator to plead guilty in the January 6 investigation.   The government also credits his cooperation with helping secure the guilty pleas of his two co-conspirators.   Colt's substantial assistance informs and supports the government's recommended sentence.

## VIII.   RESTITUTION

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes."   *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011).[16]   Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990), identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2), and is applied to costs such as the expenses associated with

---

[16] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), which "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, does not apply here. *See* 18 U.S.C. § 3663A(c)(1).

recovering from bodily injury, 18 U.S.C. § 3663(b).   At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement."   *See* 18 U.S.C. § 3663(a)(3).   *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here.   The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Colt must pay $1,000 in restitution to the Architect of the Capitol, which reflects in part the role he played in the riot on January 6.[17]   PSR ¶ 7 and n.2.   As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $1,495,326.55" in damages,[18] a figure based on loss estimates supplied by the Architect of the Capitol in May 2021.   *Id.*   Colt's restitution payment must be made to the Department of Treasury, which will forward the payment to the Architect of the Capitol.   *See* PSR ¶ 4 n.2.

## IX.   CONCLUSION

For the reasons set forth above, the government asks that the Court impose a sentence of 18 months' imprisonment, three years of supervised release, restitution in the amount of $1,000, and the mandatory $100 special assessment for each count of conviction.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:    */s/ Jessica Arco*

---

[17] Unlike under the Sentencing Guidelines for which the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA.   *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

[18] As the Court is aware from other cases (*e.g.*, *United States v. Sandlin*), this estimate has since been revised upward to over $2.8 million in damage and losses.

JESSICA ARCO
Trial Attorney-Detailee
D.C. Bar No. 1035204
601 D St., NW
Washington, D.C. 20530
jessica.arco@usdoj.gov
Telephone: 202-514-3204