Nicole Owens
FEDERAL PUBLIC DEFENDER
Mark Ackley
First Assistant
FEDERAL DEFENDER SERVICES OF IDAHO
702 W. Idaho, Ste. 1000
Boise, Idaho 83702
Telephone:  (208) 331-5500
Facsimile:   (208) 331-5525

Attorneys for Defendant
JOSIAH COLT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 1:21-cr-00074-DLF |
| | ) | |
| Plaintiff, | ) | RESPONSE TO THE |
| | ) | GOVERNMENT'S SENTENCING |
| vs. | ) | MEMORANDUM |
| | ) | |
| JOSIAH COLT, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## Response to the Government's
## Sentencing Memorandum

The government's sentencing memorandum is flawed in many respects. Three will be addressed in this response. First, the government subtly distorts the nature and scope of Josiah's travel preparations as weeks of planning for a "civil war," an alleged reference to the eventual riot at the Capitol. In fact, Josiah's preparations and proclamations, *prior to former President Trump's speech*, were made in anticipation of violent counterprotests at the "Stop the Steal" rally, not for what became the riot at the Capitol. In a similar fashion, the government attributes actions and comments of others to Josiah as if he necessarily condoned them by his mere presence.

Second, the government defines Josiah by his worst decisions during a few moments of a single day in his life—when in fact his "history and characteristics" are those of an individual, now in his mid-30s, who has tried to live his entire life according to moral principles. The truth is that Josiah is a good person who made a series of very bad choices based on misinformation and the emotional oratory of a demagogue.

Third, the government discounts Josiah's sincere, and repeated, declarations of remorse. By doing so, the government seeks to present Josiah as a danger to the community despite his excellent performance while released over the past 30 months; release supported by the government until now.

Response to the Government's
Sentencing Memorandum
-2-

**1. The government's subtle and inflammatory distortions.**

The government inaccurately conflates Josiah's earlier preparations for the "Stop the Steal" rally with the subsequent planning and unlawful conduct at the Capitol.  For example, the government asserts:

> The defendant, **Josiah Colt**, together with his coconspirators, Ronald Sandlin and Nathaniel DeGrave,[1] **substantially planned for** and then participated in **the January 6, 2021 attack** on the United States Capitol—
>
> * * * *
>
> Cole anticipated a "civil war" in the nation's capital on January 6 and **planned for weeks in advance to interfere with the peaceful transition of power**[.]

Dkt. 41, at 1, 3 (emphasis added).  These are misleading statements, at best. Indeed, as subtly conceded by the government elsewhere in its memorandum, Josiah planned for the expectation of violence **at the "Stop the Steal" rally**, not the eventual riot.  *Id.,* at 2 ("Colt and his co-conspirators traveled to Washington D.C. to attend the 'Stop the Steal' rally with the expectation that there would be violence—specifically, a 'civil war.'").[1]  That is much closer to a clear statement of the truth.

The fact is that Josiah, and others, were expecting violent counterprotests by Antifa and/or BLM.  Indeed, the violence from Antifa and

---

[1] The idea of an "Antifa civil war" was not uncommon on conservative junk news sites during former President Trump's tenure in the White House.  *See, e.g.,* https://www.pbs.org/newshour/nation/google-top-stories-featured-false-news-rumored-antifa-civil-war

BLM related riots leading up to the events of January 6 remains a hot issue for many members in Congress.  A transcript from a 2022 hearing about the January 6 investigation includes the following comments:

> Mr. Higgins:  Nineteen people died during BLM riots last year. Hundreds and hundreds were injured. Two thousand police officers were injured from BLM riots last year. And yet we are going to discuss today, as if none of that happened, the events of January 6.
> . . . .
> Mr. Fallon: [Republicans] have condemned violence, rioting, and mayhem at every turn. We did so in the summer of 2020 during the BLM and Antifa violent riots that swept the country in 140 cities, cost $2 billion in damages, and killed two dozen Americans.[2]

The government's narrative has been carefully crafted.  Take, for example, the government's description of the "debate" whether to bring a firearm to the January 6 rally.  In this instance, the government quotes from a short video clip but omits some critical quotable material.  Here is what is missing, from Josiah's own mouth at the time:

> And are they going to be arming Antifa with guns?  That's not out of the question. They were dropping off bricks yesterday. Apparently. Allegedly. I didn't see them.

Dkt. 41, Ex. 1 (0:00:26-0:00:38).[3]  Omitting the reference to Antifa and the rumors of bricks alters the context of the "debate."  The fact is that Josiah was

---

[2] https://www.govinfo.gov/content/pkg/CHRG-117hhrg44570/html/CHRG-117hhrg44570.htm

[3] Social media and other outlets contended that Antifa was known to use bricks at protests and counterprotests. *See, e.g.,*
https://twitter.com/DogpatchPress/status/1268049952371929088

expecting violence from the counter-protesters. And just as people had died from such acts of violence over the prior summer, he thought there could be bloodshed at the rally as well. Nevertheless, as the government rightfully concedes, Josiah *refrained* from bringing the firearm out of respect for the law in Washington D.C.[4]

In the end, the eventual decision to march on the Capitol was made *after* the call to action by the former president and his surrogates. At that point, Josiah and his co-conspirators adjusted their plans and headed to the Capitol with the "tactical gear," walkie-talkies, etc., that they already had for the rally.

Beyond the subtle but inflammatory mischaracterization of the nature and scope of Josiah's preparations, the government unfairly attributes the full weight of every aggravating comment and action by Sandlin and DeGrave, every matter recorded on his GoPro, and every incident at the Capitol that day (whether observed or not), as if Josiah condoned all of it. For example, the government recounts an incident in which an officer was pepper sprayed during an assault in which *Sandlin and DeGrave* (but not Josiah) participated. The government *suggests*, *but is careful not to directly assert*, that Josiah

---

[4] Josiah had his full Second Amendment rights prior to January 6 but was apparently ignorant of local law on the issue until he had already arrived. Simply Google "protests with guns in Idaho" and the Court can see how common it is in Idaho for protestors (and counter protestors) to bring guns to rallies.

Response to the Government's
Sentencing Memorandum

witnessed the event, condoned it, and ignored the officer as he suffered through momentary blindness.  Dkt. 41., at 11 ("Despite recording this moment with his GoPro, Colt continued on his path through the Capitol.").

Please carefully watch (and re-watch) the relevant portion of the video. It is short, and things were chaotic.  Ex. 7 (0:02:13-0:02:18).  The clip shows Josiah initially some distance away from the crowd and focused on trying to get Sandlin's attention.  Very quickly, a large group of people, including the infamous "zip tie guy" quickly approached Josiah where he stood on the stairs. The fact is that Josiah neither saw the assault nor the wounded officer.  Here is a still from those few seconds:



**And here is the bottom line:**  Josiah's conduct on January 6 was reprehensible and felonious.  He does not contest that.  But his sentence should reflect his actual conduct; it should not be distorted to justify a sentence greater than necessary.

**2. The government's ignorance and/or neglect of Josiah's history and characteristics.**

In all fairness to the government on this one, despite the information contained in the PSR, they were likely unaware of just how much of a boy scout (literally) Josiah has been his entire life, and how he has gone the extra mile, e.g., volunteering as a security guard, volunteering to repair roofs, etc., during his period of release since his offense. That said, the government should know better than to effectively equate *any* defendant's entire life history to their worst moments, especially a defendant who has never even spent a night in a jail. None of us would want that, because it is not fair.

Dedicating just *three* sentences to this sentencing factor demonstrates why the government's recommendation for a guideline sentence, even one at the low end, should not carry the day. *Compare* Dkt. 41, at 18 *with* Dkt. 40-1, at 9-22. Given Josiah's overwhelmingly positive history and characteristics, this sentencing factor justifies a downward variance.

**3. The government discounts Josiah's sincere, and repeated, declarations of remorse.**

Another three problems with this third flaw. First, contrary to the government's assertions, Josiah *is* remorseful. Yes, no doubt he knew he would be caught. Certainly, that is one reason why he voluntarily surrendered, and it also likely affected his decision to make a public proclamation of his remorse. Here was just one of his statements, made on just the day after the riot:

Response to the Government's
Sentencing Memorandum

> I sincerely apologize to the American people. I recognize my actions that have brought shame upon myself, my family, my friends, and my beautiful country.  In the moment I thought I was doing the right thing. I realize now that my actions were inappropriate, and I beg for forgiveness from America and my home state of Idaho.

Dkt. 40-1, Ex. A.  Josiah stands by every word of that to this day.  It is not necessarily an insincere statement simply because it may also support a call for leniency.

The fact is that Josiah did not know the extent of damage and loss of life that occurred at different times and locations from him at the Capitol because he had already left the Capitol.  Once the gravity of the situation settled in, and the adrenaline wore off, and once he learned the extent of the destruction, Josiah felt genuine remorse.  So, he tried to make amends.  Yet, under the government's reasoning, no act of contrition under circumstances such as Josiah faced could ever be seen as sincere.  That analysis is too cynical for our system of justice.

Second, the government spills quite a bit of ink quoting from a *different* judge addressing a *different* defendant in a *different* case, effectively urging the Court to adopt those findings for Josiah.  Dkt. 41, at 19.  But who even is Matthew Mazzocco?  What exactly did he do?  What did he say and when?  More importantly, what are his history and characteristics?  Did he also cooperate?

Josiah trusts the Court will make its own assessment.  And for his part, Josiah will be prepared to answer any concerns the Court has about the sincerity of his remorse and/or the motivation for his public statements.

Third, the government's unwarranted attacks on Josiah's sincerity are apparently designed to support its argument that "specific deterrence" warrants incarceration based on the fear that he might re-offend.  This is one of the most puzzling of the government's arguments.  After all, except for his brief detention during a book and release procedure in January 2021, Josiah has remained out of custody in large part due to the *government's* recognition that he does not present a danger to the community.  Further, since his release, he has been a model citizen, and complied with all conditions of his release. *See, e.g.,* Dkt. 20, 26, 28, 29, 31, and 34.  Notably, Josiah has been out of custody for *thirty* (30) months.  Nothing has changed to support an argument that incarceration is necessary to protect the public.

## Conclusion

The government makes a sentencing recommendation of 18 months incarceration, representing the low-end of the applicable guideline range after a departure for substantial assistance.  For the reasons outlined in this response, the government's recommendation is tainted by some seriously flawed assessments of the facts.  Regardless, the guidelines range, upon which the government's recommendation is ultimately premised, is only the starting

Response to the Government's
Sentencing Memorandum

point for the Court's determination of a sentence. And the departure for

substantial assistance does not account for mitigating circumstances such as

Josiah's history and characteristics, his sincere expressions of remorse, and his

long-term compliance with the conditions of his release. Accordingly, Mr. Colt

respectfully maintains that a sentence of six months home confinement is

sufficient to accomplish the purposes of sentencing.


Dated: May 5, 2023                    Respectfully submitted,

                                      NICOLE OWENS
                                      FEDERAL PUBLIC DEFENDER
                                      By:


                                      /s/ Mark Ackley
                                      Mark Ackley
                                      Federal Defender Services of Idaho
                                      Attorneys for Defendant
                                      JOSIAH COLT


Response to the Government's          -10-
Sentencing Memorandum

CERTIFICATE OF SERVICE

I CERTIFY that I am an employee of the Federal Defender Services of Idaho, and that a copy of the foregoing document, RESPONSE TO THE GOVERNMENT'S SENTENCING MEMORANDUM, was served on all parties named below on this 5th day of May 2023.


Jessica Arco, Trial Attorney - Detailee          ____ United States Mail
601 D Street NW                                  ____ Hand Delivery
Washington DC 20003                              ____ Facsimile Transmission
(202) 514-3204                                   _X_ CM/ECF Filing
Jessica.arco@usdoj.gov                           ____ Email Transmission



Dated: May 5, 2023                /s/ Joy Fish
                                  Joy Fish